## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ZIMMERMAN & WEISER LLP
Jean-Marc Zimmerman
Anatoly S. Weiser
226 St. Paul Street
Westfield, New Jersey 07090
Tel:  (908) 654-8000
Fax: (908) 654-7207
jmz@iplcounsel.com
aw@ iplcounsel.com

Attorneys for Content Extraction and Transmission LLC

| | |
|---|---|
| CONTENT EXTRACTION AND TRANSMISSION LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION,<br><br>   Defendant. | Civil Action No. 3:12-cv-2501-MAS-TJB<br><br>District Judge Michael A. Shipp<br>Magistrate Judge Tonianne J. Bongiovanni |
| CONTENT EXTRACTION AND TRANSMISSION LLC,<br><br>   Plaintiff,<br><br>   v.<br><br>THE PNC FINANCIAL SERVICES GROUP, INC. AND PNC WELLS FARGO BANK, NATIONAL ASSOCIATION,<br><br>   Defendants. | Civil Action No. 3:12-cv-6960-MAS-TJB<br><br>District Judge Michael A. Shipp<br>Magistrate Judge Tonianne J. Bongiovanni |
| DIEBOLD, INCORPORATED,<br><br>   Plaintiff,<br><br>   v.<br><br>CONTENT EXTRACTION AND TRANSMISSION LLC, MITCHELL MEDINA, CATHERINE ELIAS and JEAN-MARC ZIMMERMAN,<br><br>   Defendants. | Civil Action No. 3:12-cv-7640-MAS-TJB<br><br>District Judge Michael A. Shipp<br>Magistrate Judge Tonianne J. Bongiovanni |

CONTENT EXTRACTION AND
TRANSMISSION LLC,

                Counter-Plaintiff and
                Third-Party Plaintiff,

                v.

DIEBOLD, INCORPORATED,

                Counter-Defendant,

                and

JOHN DOE COMPANIES 1-100,

                Third-Party Defendants.

Civil Action No. 3:12-cv-7640-MAS-TJB

District Judge Michael A. Shipp
Magistrate Judge Tonianne J. Bongiovanni

## COUNTERCLAIMS AND THIRD-PARTY COMPLAINT

Counter-plaintiff and third-party plaintiff, Content Extraction and Transmission LLC ("CET"), for its Counterclaims against Diebold, Incorporated ("Diebold") and Third-Party Complaint against John Doe Companies 1 through 100, states as follows:

## THE PARTIES

1.     CET is a limited liability company organized and existing under the laws of the State of New Jersey, with its principal place of business in New Jersey.

2.     CET is informed and believes, and based thereon alleges, that Diebold is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Ohio.

3.     John Doe Companies 1-100 are entities presently unknown to whom Diebold has sold and is selling automatic teller machines ("ATMs") and/or software to process check and/or currency bill deposits in ways that infringe the patents identified below.

## JURISDICTION AND VENUE

4.      This action arises under the patent laws of the United States of America, Title 35 of the United States Code.  This Court has jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a).

5.      CET is informed and believes, and based thereon alleges, that Diebold is doing business and committing acts of infringement of the patents identified below in this judicial district, and is subject to personal jurisdiction in this judicial district.

6.      The Counterclaims are so related to the claims in the Complaint of Diebold in the instant action that they form part of the same case or controversy.

7.      CET is informed and believes, and based thereon alleges, that each of the John Doe Companies 1 through 100 is doing business and committing acts of infringement in this judicial district and is subject to personal jurisdiction in this judicial district.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

9.      Diebold brought the instant action in this Court and has voluntarily submitted to the jurisdiction of this Court, and has laid venue in this judicial district.


## THE PATENTS

10.     On November 2, 1993, U.S. Patent No. 5,258,855 (hereinafter referred to as "the '855 patent"), entitled "Information Processing Methodology," was duly and legally issued.

11.     On November 29, 1994, U.S. Patent No. 5,369,508 (hereinafter referred to as "the '508 patent"), entitled "Information Processing Methodology," was duly and legally issued.

12.     On April 29, 1997, U.S. Patent No. 5,625,465 (hereinafter referred to as "the '465 patent"), entitled "Information Processing Methodology," was duly and legally issued.

13.     On June 16, 1998, U.S. Patent No. 5,768,416 (hereinafter referred to as "the '416 patent"), entitled "Information Processing Methodology," was duly and legally issued.

14.     CET is the owner by way of assignment of all right, title and interest in and to the '855, '508, '465 and '416 patents, which hereinafter will be collectively referred to as the "CET Patents."

15.     The CET Patents are directed to processing information from hard copy documents, such as checks and currency bills, wherein information is extracted from different fields in a hard copy document and then transmitted or inputted to an application in a particular format so that it can be received and processed.


## DIRECT INFRINGEMENT BY DIEBOLD

16.     CET is informed and believes, and based thereon alleges, that Diebold makes, uses and sells ATMs and software to process envelope-free deposits of checks and currency bills, including Diebold "i Series" ATMs with their associated check acceptors, Diebold "ix Series" ATMs with their associated check acceptors, and Diebold's "Opteva" ATMs with their associated check and currency bill acceptors.

17.     CET is informed and believes, and based thereon alleges, that Diebold makes, uses and sells software to process deposits of checks made using personal computers (irrespective of the operating system) with scanners or other digitizers ("PCs").

18.    CET is informed and believes, and based thereon alleges, that Diebold makes, uses and sells software to process deposits of checks made using mobile electronic devices, *e.g.*, smart phones, tablets.

19.    CET is informed and believes, and based thereon alleges, that Diebold's ATMs, check acceptors, currency bill acceptors, and software infringe the claims of the CET Patents, literally and/or under the doctrine of equivalents, in violation of CET's rights.

20.    CET is informed and believes, and based thereon alleges, that Diebold's ATMs with check acceptors are configured to receive checks, scan the checks, recognize the character information printed on the checks, identify the check amounts, and transmit the amounts to one or more other applications, such as accounting applications that credit the accounts into which the checks are deposited and communication applications that provide receipts for the deposits.

21.    CET is informed and believes, and based thereon alleges, that Diebold's ATMs with currency bill acceptors are configured to receive currency bills, scan the currency bills, recognize the character information printed on the currency bills, identify the denomination of the currency bills, and transmit the amount to one or more other applications, such as accounting applications that credit the accounts into which the currency bills are deposited and accounts from which the bills are withdrawn after the bills are recycled, and communication applications that provide receipts for the deposits.

22.    CET is informed and believes, and based thereon alleges, that Diebold's software is designed to cause PCs and/or mobile electronic devices to digitize images of deposited checks by scanning/digitizing the checks, recognize the character information printed on the checks, identify the check amounts, and transmit the amounts to one or more other applications, such as

accounting applications that credit the accounts into which the checks are deposited and communication applications that confirm the deposits.

23.     Given the capability to scan/digitize checks and recognize fields of information on the checks, it is likely that Diebold's software also recognizes fields of information in addition to the check amounts, including bank account numbers and bank routing numbers associated with the accounts against which the checks were drawn, and transmits the information in these additional fields to one or more other applications, such as applications that facilitate clearing of the checks and periodic balancing of inter-bank obligations.

24.     CET is informed and believes, and based thereon alleges, that Diebold tested the operation of its ATMs and software, and likely continues to test its ATMs and software.

25.     It is likely that Diebold demonstrated the operation of its ATMs and software to potential customers, and likely continues to demonstrate its ATMs and software to existing and potential customers.

26.     CET is informed and believes, and based thereon alleges, that parts of Diebold's ATMs and modules of Diebold's software are designed specifically to enable envelope-free infringing ATM, PC and mobile deposits, and do not have substantial non-infringing uses.


## DIRECT INFRINGEMENT BY JOHN DOE COMPANIES

27.     CET is informed and believes, and based thereon alleges, that each John Doe Company 1 through 100 is a customer of Diebold and uses Diebold's software for processing information obtained from checks deposited using ATMs, PCs and/or mobile electronic devices, wherein the information is extracted from different fields in the checks and then transmitted or inputted to an application program in a particular format so that it can be received and processed,

in a manner that infringes the claims of the CET Patents, literally and/or under the doctrine of equivalents, in violation of CET's rights.

28.     CET is informed and believes, and based thereon alleges, that some of the John Doe Companies 1 through 100 use Diebold's software together with Diebold's ATMs with check acceptors and in some instances also with currency bill acceptors, for processing information from checks and/or currency bills, wherein the information is extracted from different fields in the checks and/or currency bills and then transmitted or inputted to an application in a particular format so that it can be received and used by the receiving application program, in a manner that infringes the claims of the CET Patents, literally and/or under the doctrine of equivalents, in violation of CET's rights.

29.     CET is informed and believes, and based thereon alleges, that some of the John Doe Companies 1 through 100 use Diebold's software, for processing information obtained from checks deposited using PCs and/or mobile devices, wherein the information is extracted from different fields in the checks and then transmitted or inputted to an application program in a particular format so that it can be received and used by the receiving application program, in a manner that infringes the claims of the CET Patents, literally and/or under the doctrine of equivalents, in violation of CET's rights.

## DIEBOLD'S INDUCEMENT TO INFRINGE, CONTRIBUTORY INFRINGEMENT, AND WILLFUL INFRINGEMENT

30.     CET is informed and believes, and based thereon alleges, that parts of Diebold's ATMs are designed specifically to enable envelope-free deposits.

31.     CET is informed and believes, and based thereon alleges, that certain modules of Diebold's software are designed specifically to enable envelope-free deposits.

32.      CET is informed and believes, and based thereon alleges, that the parts of Diebold's ATMs are material for envelope-free deposits.

33.      CET is informed and believes, and based thereon alleges, that certain modules of Diebold's software are material for envelope-free deposits.

34.      CET is informed and believes, and based thereon alleges, that the parts of Diebold's ATMs do not have substantial non-infringing uses.

35.      CET is informed and believes, and based thereon alleges, that the modules of Diebold's software do not have substantial non-infringing uses.

36.      Diebold has been aware of CET's Patents since no later than June 27, 2012.

37.      CET is informed and believes, and based thereon alleges, that Diebold has investigated the CET Patents and became aware, or should have become aware, that Diebold's ATMs and software infringe the '465 and the '416 patents.

38.      Diebold advertises the ability of its ATMs and software to process check and currency bill ATM deposits in a manner that infringes the CET Patents.

39.      Diebold advertises the following features of its ATMs and software to capture and extract specific information from deposited checks and currency bills and then process the extracted information to complete the deposit: capturing high resolution images of both sides of the check, quick validation and counting the deposited currency, collection of data and check data images associated with each transaction, posting deposits to consumer account, compression of data and images and transmission to a central site, and performing check clearing functions.

40.      Diebold advertises the ability of certain of its software products to process check deposits made using PCs wherein the software captures and extracts information from

scanned/digitized checks and then transmits the extracted information for processing in a manner that infringes the CET Patents.

41.     Diebold advertises the ability of its remote deposit capture software as a secure, browser-based, thin client that allows financial institutions to offer corporate and merchant customers the ability to make check deposits from the convenience of their office using image-capture software and hardware.

42.     Diebold advertises that with its remote deposit capture software, check items are scanned/digitized, converted to images and transmitted via a secure Web interface for final validation and processing.

43.     Diebold's infringement of the '465 patent and the '416 patents has been and continues to be willful.

44.     Diebold advertises the ability of certain of its software products to process check deposits made using mobile electronic devices wherein the software captures and extracts information from checks scanned/digitized using a mobile device and then transmits the extracted information for processing in a manner that infringes the CET Patents.

45.     Diebold advertises its software as offering mobile remote deposit capture functionality, including the ability to capture remotely and process check deposits using mobile devices.

46.     CET is informed and believes, and based thereon alleges, that Diebold has been advertising and offering for sale the infringing ATMs and software after Diebold became aware that its ATMs and software infringed the '465 patent.

47.     CET is informed and believes, and based thereon alleges, that Diebold has been advertising and offering for sale the infringing ATMs and software after Diebold became aware that its ATMs and software infringed the '416 patent.

48.     CET is informed and believes, and based thereon alleges, that Diebold has been selling and installing infringing ATMs and software with the specific knowledge of the CET Patents and the specific knowledge that the ATMs and software are and will be used to infringe the CET Patents.

49.     On March 26, 2013, Diebold installed an infringing ATM (or portions of the ATM specifically designed for envelope-free deposits) in Union Bank branch located at 12950 Carmel Country Road, San Diego, CA, 92130.

50.     All procedural facts of the present action and the actions consolidated with the present action (Case No. 12-CV-2501 and Case No. 12-cv-06960, both pending in this Court) are judicially noticeable and are hereby incorporated by reference.

51.     Diebold filed the original Complaint in the present action, which included five tort counts, against CET, CET's patent counsel, and two of the inventors of the CET Patents, one of whom is also a member of CET.  Diebold filed the five tort counts in the original Complaint for an improper purpose of trying to prevent CET from lawfully asserting its First Amendment rights to seek redress from United States courts for patent claims against infringers.

52.     Diebold filed the First Amended Complaint in the present action, which included two tort counts against CET, CET's patent counsel, and two of the inventors of the CET Patents, one of whom is also a member of CET.  Diebold filed the two tort counts in the original Complaint for the improper purpose of trying to prevent CET from lawfully asserting its First Amendment rights to seek redress from United States courts for patent claims against infringers.

53.     Diebold is jointly responsible with each of the John Doe Companies 1 through 100 for the infringement of the CET Patents by said each John Doe Company 1 through 100, through the use of Diebold's ATMs and software.

54.     CET is informed and believes, and based thereon alleges, that Wells Fargo, National Association, defendant in Case No. 12-CV-2501, which has been consolidated with the present action, is a customer of Diebold and uses Diebold's software for processing information obtained from checks deposited through Diebold's ATMs, wherein the information is extracted from different fields in the checks and then transmitted or inputted to an application program in a particular format so that it can be received and processed, in a manner that infringes the claims of the CET Patents, literally and/or under the doctrine of equivalents, in violation of CET's rights.

55.     Diebold is jointly responsible with Wells Fargo, National Association, for the infringement of the CET Patents by Wells Fargo, National Association, through the use of Diebold's ATMs and software.

56.     CET is informed and believes, and based thereon alleges, that  The PNC Financial Services Group, Inc., and PNC Bank, National Association, defendants in Case No. 12-cv-06960, which has been consolidated with the present action, are customers of Diebold and use Diebold's software for processing information obtained from checks deposited through Diebold's ATMs, wherein the information is extracted from different fields in the checks and then transmitted or inputted to an application program in a particular format so that it can be received and processed, in a manner that infringes the claims of the CET Patents, literally and/or under the doctrine of equivalents, in violation of CET's rights.

57.     Diebold is jointly responsible with The PNC Financial Services Group, Inc., and PNC Bank, National Association, for the infringement of the CET Patents by PNC Financial

Services Group, Inc., and PNC Bank, National Association, through the use of Diebold's ATMs and software.

## CLAIMS FOR PATENT INFRINGEMENT

### COUNT ONE

58. CET repeats and incorporates herein the entirety of the allegations contained in all paragraphs above.

59. Diebold directly infringed the '855 patent by making, offering to sell, selling, installing, configuring, servicing, and testing/operating ATMs and software to process check and currency bill deposits made at its ATMs, and software to process check deposits made using PCs and/or mobile electronic devices, in a manner that constituted infringement of the claims of the '855 patent, before expiration of the '855 patent.

60. At least some of the John Doe Companies 1 through 100 bought and operated Diebold's ATMs and software to process check and currency bill deposits made at the ATMs, and/or software to process check deposits made using PCs and/or mobile electronic devices, in a manner that constituted infringement of the claims of the '855 patent, before expiration of the '855 patent.

61. CET has been damaged by the foregoing activities of Diebold and John Doe Companies 1 through 100 which infringed the '855 patent.

### COUNT TWO

62. CET repeats and incorporates herein the entirety of the allegations contained in all paragraphs above.

63.     Diebold directly infringed the '508 patent by making, offering to sell, selling, installing, configuring, servicing, and testing/operating ATMs and software to process check and currency bill deposits made at the ATMs, and software to process check deposits made using PCs and/or mobile electronic devices, in a manner that constituted infringement of the claims of the '508 patent, before expiration of the '508 patent.

64.     At least some of the John Doe Companies 1 through 100 bought and operated Diebold's ATMs and software to process check and currency bill deposits made at the ATMs, and/or software to process check deposits made using PCs and/or mobile electronic devices, in a manner that constituted infringement of the claims of the '508 patent, before expiration of the '508 patent.

65.     CET has been damaged by the foregoing activities of Diebold and John Doe Companies 1 through 100 which infringed the '508 patent.

## COUNT THREE

66.     CET repeats and incorporates herein the entirety of the allegations contained in all paragraphs above.

67.     Diebold has directly infringed and continues to directly infringe the '465 patent by making, offering to sell, selling, installing, configuring, servicing, and testing/operating ATMs and software to process check and currency bill deposits made at its ATMs, and software to process check deposits made using PCs and/or mobile electronic devices, in a manner that constituted infringement of the claims of the '465 patent.

68.     Diebold has been and is actively inducing the infringement of the '465 patent by offering to sell, selling, installing, configuring, servicing, and intending and encouraging its

customers to use its ATMs and software, including check acceptors, currency bill acceptors, and software modules that have no substantial non-infringing uses and are material parts of the invention, in a manner that constitutes direct infringement of the claims of the '465 patent. Diebold has been and continues doing so with the knowledge of the '465 patent and with the specific intent that its customers use the ATMs with their components and the software with its modules in a manner that constitutes direct infringement of the claims of the '465 patent.

69.     CET is informed and believes, and based thereon alleges, that Diebold has been and is actively inducing the infringement of the '465 patent by encouraging Wells Fargo, National Association, to use its ATMs and software, including check acceptors, currency bill acceptors, and software modules that have no substantial non-infringing uses and are material parts of the invention, in a manner that constitutes direct infringement of the claims of the '465 patent. Diebold has been and continues doing so with the knowledge of the '465 patent and with the specific intent that Wells Fargo, National Association use the ATMs with their components and the software with its modules in a manner that constitutes direct infringement of the claims of the '465 patent.

70.     CET is informed and believes, and based thereon alleges, that Diebold has been and is actively inducing the infringement of the '465 patent by encouraging The PNC Financial Services Group, Inc., and PNC Bank, National Association, to use its ATMs and software, including check acceptors, currency bill acceptors, and software modules that have no substantial non-infringing uses and are material parts of the invention, in a manner that constitutes direct infringement of the claims of the '465 patent. Diebold has been and continues doing so with the knowledge of the '465 patent and with the specific intent that The PNC Financial Services Group, Inc., and The PNC Bank, National Association, use the ATMs with their components and

the software with its modules in a manner that constitutes direct infringement of the claims of the '465 patent.

71.     Diebold has been and is contributorily infringing the '465 patent by selling to its customers, installing, configuring, and servicing its ATMs and software, including check acceptors, currency bill acceptors, and software modules, which have no substantial non-infringing uses and are material parts of the invention of the '465 patent, in a manner that constitutes direct infringement of the claims of the '465 patent. Diebold is doing so with the knowledge of the '465 patent and with the specific intent that the customers use the ATMs with their components and the software with its modules in a manner that constitutes direct infringement of the claims of the '465 patent.

72.     Each John Doe Company 1 through 100 bought and operated Diebold's ATMs and software to process check and currency bill deposits made at its ATMs, and/or software to process check deposits made using PCs and/or mobile electronic devices, in a manner that constitutes infringement of the claims of the '465.

73.     CET has been and is being damaged by the foregoing activities of Diebold and John Doe Companies 1 through 100 which infringe the '465 patent, and will be irreparably harmed unless such infringing activities are enjoined by this Court.

## **COUNT FOUR**

74.     CET repeats and incorporates herein the entirety of the allegations contained in all paragraphs above.

75.     Diebold has directly infringed and continues to infringe directly the '416 patent by making, offering to sell, selling, installing, configuring, servicing, and testing/operating

ATMs and software to process check and currency bill deposits made at its ATMs, and software to process check deposits made using PCs and/or mobile electronic devices, in a manner that constituted infringement of the claims of the '416 patent.

76.     Diebold has been and is actively inducing the infringement of the '416 patent by offering to sell, selling, installing, configuring, servicing, and intending and encouraging its customers to use its ATMs and software, including check acceptors, currency bill acceptors, and software modules that have no substantial non-infringing uses and are material parts of the invention, in a manner that constitutes direct infringement of the claims of the '416 patent. Diebold has been and continues doing so with the knowledge of the '416 patent and with the specific intent that the customers use the ATMs with their components and the software with its modules in a manner that constitutes direct infringement of the claims of the '416 patent.

77.     CET is informed and believes, and based thereon alleges, that  Diebold has been and is actively inducing the infringement of the '416 patent by encouraging Wells Fargo, National Association, to use its ATMs and software, including check acceptors, currency bill acceptors, and software modules that have no substantial non-infringing uses and are material parts of the invention, in a manner that constitutes direct infringement of the claims of the '416 patent.  Diebold has been and continues doing so with the knowledge of the '416 patent and with the specific intent that Wells Fargo, National Association use the ATMs with their components and the software with its modules in a manner that constitutes direct infringement of the claims of the '416 patent.

78.     CET is informed and believes, and based thereon alleges, that  Diebold has been and is actively inducing the infringement of the '416 patent by encouraging The PNC Financial Services Group, Inc., and PNC Bank, National Association, to use its ATMs and software,

including check acceptors, currency bill acceptors, and software modules that have no substantial non-infringing uses and are material parts of the invention, in a manner that constitutes direct infringement of the claims of the '416 patent.  Diebold has been and continues doing so with the knowledge of the '416 patent and with the specific intent that The PNC Financial Services Group, Inc., and The PNC Bank, National Association, use the ATMs with their components and the software with its modules in a manner that constitutes direct infringement of the claims of the '416 patent.

79.     Diebold has been and is contributorily infringing the '416 patent by selling to its customers, installing, configuring, and servicing its ATMs and software, including check acceptors, currency bill acceptors, and software modules, which have no substantial non-infringing uses and are material parts of the invention of the '416 patent, in a manner that constitutes direct infringement of the claims of the '416 patent.  Diebold is doing so with the knowledge of the '416 patent and with the specific intent that the customers use the ATMs with their components and the software with its modules in a manner that constitutes direct infringement of the claims of the '416 patent.

80.     Each John Doe Company 1 through 100 bought and operated Diebold's ATMs and software to process check and currency bill deposits made at its ATMs, and/or software to process check deposits made using PCs and/or mobile electronic devices, in a manner that constitutes infringement of the claims of the '416.

81.     CET has been and is being damaged by the foregoing activities of Diebold and John Doe Companies 1 through 100 which infringe the '416 patent, and will be irreparably harmed unless such infringing activities are enjoined by this Court.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, counter-plaintiff and third-party plaintiff CET prays for judgment against counter-defendants Diebold and third-parties John Doe Companies 1 through 100 on all the counts and for the following relief:

A.      Declaration that the CET is the owner of the CET Patents and has the right to sue and to recover for infringement thereof;

B.      Declaration that Diebold has directly infringed, actively induced the infringement of, and contributorily infringed the CET Patents;

C.      Declaration that Diebold's infringement of the '416 patent and the '465 patent has been willful and the case is exceptional under 35 U.S.C. § 285;

D.      Declaration that each John Doe Company 1 through 100 directly infringed the CET Patents;

E.      Declaration that Diebold and each John Doe Company 1 through 100 are jointly responsible for the damages from infringement of the CET Patents through the use of Diebold's ATMs and software by said each John Doe Company 1 through 100;

F.      Declaration that Diebold is responsible jointly with Wells Fargo, National Association, for the damages from infringement of the CET Patents through the use of Diebold' ATMs and software, by Wells Fargo, National Association;

G.      Declaration that Diebold is responsible jointly with The PNC Financial Services Group, Inc., and PNC Bank, National Association, for the damages from infringement of the CET Patents through the use of Diebold's ATMs and software, by The PNC Financial Services Group, Inc., and PNC Bank, National

Association;

H.    A preliminary and permanent injunction against Diebold, each of its officers, agents, servants, employees, and attorneys, all parent and subsidiary corporations, their assigns and successors in interest, and those persons acting in active concert or participation with them, including distributors, enjoining them from continuing acts of direct infringement, active inducement of infringement, and contributory infringement of CET's '465 and '416 patents;

I.    An accounting for damages under 35 U.S.C. § 284 for infringement of CET's '855, '508, '465 and '416 patents by Diebold and John Doe Companies 1 through 100, and the award of damages so ascertained to CET together with interest as provided by law;

J.    A preliminary and permanent injunction against John Doe Companies 1-100, each of their officers, agents, servants, employees, and attorneys, all parent and subsidiary corporations, their assigns and successors in interest, and those persons acting in active concert or participation with them, including distributors and customers, enjoining them from continuing acts of direct infringement, active inducement of infringement, and contributory infringement of CET's '465 and '416 patents;

K.    Award of CET's costs and expenses;

L.    Award of CET's attorney fees;

M.    Award of treble damages; and

N.    Such other and further relief as this Court may deem proper, just and equitable.

## DEMAND FOR JURY TRIAL

Counter-plaintiff and third-party plaintiff CET demands a trial by jury of all issues properly triable by jury in this action.

By:/s/Jean-Marc Zimmerman
Zimmerman & Weiser LLP
Jean-Marc Zimmerman
Anatoly S. Weiser
226 St. Paul Street
Westfield, New Jersey 07090
Tel:  (908) 654-8000
Fax: (908) 654-7207
jmz@iplcounsel.com
aw@ iplcounsel.com

Attorneys for counter-plaintiff and third-party plaintiff Content Extraction and Transmission LLC

Dated: July 5, 2013
        Westfield, NJ 07090